Good morning. Kevin Fong representing Appellants. I'd like to reserve three minutes for rebuttal. May it please the Court? All right. Thank you, Counsel. Let me begin with the issue of whether the District Court erred in granting summary judgment on Appellants' CERCLA claims. That turns on whether dependents are operators under Section 107A of CERCLA. Maybe before you get into that, you ought to talk about jurisdiction a little bit. Of course. There's jurisdiction for two independent reasons. First, the claims that were voluntarily dismissed by stipulation were ones, at least the plaintiff's claims, that were dependent. They were dependent claims. After summary judgment was granted on the CERCLA breach of contract in court claims, there were no claims left to hear as a practical matter. Was there ever a judgment here? No, there was not. So what did the District Court do that was meaningful in this case? It accepted the stipulation. It accepted the stipulation but never entered a judgment? There was never a judgment, Your Honor. So if there's never a judgment and they've only allowed the stipulation, is the Court's participation meaningful? Certainly within the meaning of... What case says it's meaningful? Oh, I think the James case because there's no intent to manipulate federal jurisdiction. Well, is there intent to manipulate if both parties only voluntarily dismissed on the condition that they could revive those cases after the appeal was completed? Why isn't that manipulation of the process? There were no conditions at all in the stipulation. It was a straight out stipulation to dismiss without prejudice. The correspondence that preceded the stipulation certainly seemed to indicate that the parties wanted to preserve the right to revive those claims. If there ever was any question or dispute, it's over now. Take a look at Ninth Circuit docket item number 15, which is ERE's opposition to the motion to dismiss. You'll recall that the motions panel has referred that motion to you, the merits panel. I guess my worry about this, and I didn't mean to interrupt you, but right here I have a lot of precedent that says where the parties cooperate for the purpose of creating appellate jurisdiction, and I'm reading from the cases, there is great risk that the court will sense manipulation and dismiss the appeal. Now we have in this case exactly that. We did not have the district court involved in entering a judgment at all. All we had was a stipulation between the parties. You didn't file any 54B certificate, so I guess I'm trying to figure out why have I got this case in front of me. Because in Ninth Circuit docket item 15, which is ERE's opposition to the motion to dismiss, at page 7, ERE has conceded that the claims that were dismissed without prejudice are wholly dependent claims. So if this case were back in the district court on the current record with that concession by ERE, there is literally nothing left to hear. So it's just like the American States v. Gastar case, one of this court's decisions. That and James, I think, are controlling. If there's nothing left before the district court, it's appropriately final, appealable, and before this court. So if there ever was any... Counsel, if that's true, why didn't the district court enter judgment then? It could have. It didn't. It didn't, so that's what I'm saying. If we went back to the district court, clearly judgment could be entered in light of the concession at docket 15. Well, I'm not sure about that. I'm not sure that the district court would enter judgment. And we don't have that scenario here. What we have is a case where the parties cooperated to stipulate and no judgment. So that's what we have now. Do you have a case to support the proposition that if the claims are dependent, that's enough to give us jurisdiction? Yes. American States v. Gastar. Clearly says that. And in fact, it deals with indemnification claims. Was that a case where judgment was entered or not entered? Excuse me, I didn't hear that. Was that a case where judgment was not entered? I believe there was not a judgment in that case. Yes, there was a judgment entered. There was a judgment entered in American States. And there was a voluntary dismissal of his own counterclaim without prejudice. But there was a judgment entered. All right. Well, I think we've got your argument on that. Why don't you turn? What is the evidence that defendant by the defendant? Well, let's start with the defendant. Evans had authority to control the grading and excavation. Okay. As to Evans, first of all, David Evans completed the grading plans for the project. And I didn't ask you about plans. I said, what's the evidence that he had authority to control the grading and the excavation? Because he actually did direct the grading and excavation. Well, what is the evidence that he did? Give us the evidence that he did. I have evidence that he was on site. That doesn't say controlled it. I have evidence. You say he was charged with monitoring and grading. But I don't have any evidence in the file for that. You say he was in charge of certifying to the L.A. County that asbestos mitigation measures were taken in compliance with approved grading plans. I didn't see any evidence of that, in fact, expressly excluded in the bid and in the agreement. So I'm trying to figure out where is this evidence that he had the authority to control the grading and the excavation? The testimony in Trevor Snell's deposition is that the David Evans, or all four men, surveyors actually did the staking work directing where the grading was to take place. So they actually exercised their authority. Now, just a minute. That's easy. But where is the evidence that the NOA rock even came from the staked areas? Oh, that's in the Rambo expert report that says that the naturally occurring asbestos was pervasive throughout the site, and in particular in the vicinity of the road that had been staked by David Evans. Go ahead. I didn't mean to interrupt you. At this point, the issue is, is David Evans an operator? Did it direct grading and excavation? The answer is clearly yes, it did direct grading and excavation. Just a minute. If I buy your argument, have I got to find him actually in control or just have the authority to control? I think either here. It's an easier case because they actually exercised direction and control by placing the stakes in the ground. So you're not going for authority to control? I think it would be great if this court would find authority to control be the test. And this court is going to have to. But it isn't. But it isn't the test, is it? Excuse me? It isn't the test. The authority to control is not the test. You must have actual control. It certainly was the test pre-Best Foods, and this court's going to have to unravel the impact of Best Foods. All right. So it would be a strange situation if the court could resolve this case without saying something about what the appropriate test is in the Ninth Circuit post-Best Foods. Are you familiar with the case North Miami, Florida versus Berger? Yes. Why is that? If I follow that case, what is distinguishing here? What's distinguishing here is the actual activities of David Evans and Langen that actually directed the activity that was the cause of the contamination.  Now, of course, the defendants may dispute how much of the cause of the contamination was attributable to them. But that's something to be decided at trial. That's something to be decided at trial where they can argue that their allocation should be low or zero. But for the threshold issue on summary judgment, whether they are operators, the test, according to Best Foods, the Supreme Court's latest word, is a simple one. It's simply, did they direct the operations that are related to the contamination? Did they direct excavation and grading? So these are not ivory tower engineers who did a report through the plan, mailed it in, and were never seen again. They were actually on site, hoops on the ground, directing where the grading was to take place and directing how deep the excavation should go. And in the case of Langen, Langen said, dig deeper. That's directing excavation as much as David Evans placing the stakes and grade here. That's actually directing operations related to the contamination. So the Rambo report. Do you want to save time for rebuttal? Yes, I'll save my remaining three minutes for rebuttal. All right, thank you. Mr. Connie and Mr. Moore, were you going to divide your time? Yes, Your Honor, this is Dave Moore on behalf of LaPelle's David Evans and Associates and Hall Foreman Incorporated. I've reached an agreement with Mr. Koenig's firm that we will split the 15 minutes as follows. I'll go first and take eight minutes. Mr. Koenig will follow and take seven minutes. All right. Could you put eight minutes on the clock, please? Yes, Judge. Thank you. All right, counsel, please proceed. Thank you, Your Honor. Again, Dave Moore on behalf of LaPelle's Hall Foreman Incorporated and David Evans and Associates. I may make reference to DEA or HFI. I'm basically referring to the same thing. With regard to the jurisdictional argument, there is evidence of an intent to manipulate appellate jurisdiction on the part of the appellants. Your Honor made reference to the correspondence that preceded the stipulation. Specifically, there was a March 8, 2018 email from counsel in which he expressly said, if we're successful on appeal, we are going to resurrect these two claims that are now ostensibly dismissed. Counsel cites to their opposition to the motion to dismiss to claim that, well, we've now conceded that those claims are dependent on the other claims. It's not clear to me that the district court would have entered a judgment on that basis. And in any event, we ended up having to dismiss some of our counterclaims just to avoid a trial. And not all of our counterclaims were dependent. In fact, at least one of them, the express indemnity claim, was independent. So between the fact that the appellants have refused to dismiss their claims with prejudice, you add to that the correspondence in which counsel specifically said, we're going to resurrect and assert these two claims again if we're successful on appeal. That adds up to a manipulation of this court's jurisdiction. Can I ask you, assuming there were no appeal, what was left to be done in the district court? We had some counterclaims and there were two claims by the appellants. One of the things that had to be done was resolve our counterclaim for express indemnity. And there had to be a decision or a determination as to whether a duty to defend on the part of appellant kangaroo had been triggered. So that still remained to be done. Ninety-five percent of the war had been fought and won from our standpoint by this point, but there was still some things that had to be determined. And we tried to get them to dismiss with prejudice so that we could go up on appeal. They refused to do so. So I think there has been clear intent to manipulate jurisdiction. How do I distinguish this case from James v. Price, Stern, Sloan? Well, in James, I don't have it in front of me, but from reading it, my recollection is that the court found that there really wasn't a clear intent to manipulate appellant jurisdiction. And I think in this case, as I've explained, you do have that intent. So the distinguishing characteristic here is that there is evidence, because it seems to me in James there was a partial summary judgment. The remaining claims were dismissed without prejudice, and we said it's a final and appealable judgment pursuant to 28 U.S.C. 1291. But I remember as well that we said because the plaintiff assumed the risk that her remaining claims might in the future be barred by the statute of limitations or latches, there was no evidence that she attempted to manipulate the jurisdiction. That's the same thing we have here. Well, I think we're a little bit different. I think we're closer to the situations in the Chang case, for example, where you did have a stipulation in that case. What we have here, we don't have a specific stipulation between the parties saying, oh, yes, we'll resurrect claims in the event of a successful appeal, but we have an email from opposing counsel that basically says that. So I think we're closer to the Chang situation than we are the James situation, Your Honor. Thank you. Are there any other questions with regard to the jurisdictional issue? If not, I'll proceed to address CERCLA. It appears not. Thank you. Very quickly, my client did not actually control the pollution-causing instrumentality, and it didn't have authority to control. If you look at appellants' opening and reply briefs, it's chock full of these assertions that there was control, that there was certification done, et cetera, et cetera. And in most instances, there isn't any citation to the record, and that's because there isn't any evidence of either actual control or authority to control. But your adversary cited two examples in his argument. I was just about to get that. The only thing that they have cited to is staking. Okay? Let's address staking. Staking doesn't determine where to dig. Staking establishes the boundaries. Don't go outside here. Don't go outside here. Don't go above this. Don't go below that. But within that vast parameter, it's the grading and excavation subcontractor that makes the determination of where to dig, and that's exactly what happened here. There isn't a single published or unpublished federal case from any jurisdiction that imposes operator liability on the basis of staking. And let's also look at how many times the staking purportedly occurred. The evidence is at volume two, page 176 of the excerpts of record, that maybe 10 or 15 times we came out to stake over the course of a three-and-a-half-year period. So that's maybe an average of three to four times a year that a surveyor, not an engineer, a surveyor came out and put flags in the ground. None of that arises to the level of actual authority to control where to specifically dig, and that is what is required under the law to show operator liability if you're using the authority to control test that was enunciated in Kaiser Aluminum. As Judge Smith indicated, though, Best Foods raises some questions that maybe the actual standard is manage, conduct, or direct. And we certainly didn't manage, conduct, or direct any of the grading or excavation operations. We didn't perform any excavation or grading. We didn't select an entity that did those things. We didn't supervise the grading or excavation. We didn't have authority to direct the grading or excavation subcontractor. We had no decision-making authority regarding the methods that were used to grade or excavate. We had no authority to direct the general contractor. We didn't even have an office on site. So the notion that we somehow directed, conducted operations so as to have operator liability under CERCLA simply by staking out things is completely – it has no basis in law, and it is outweighed by an enormous amount of evidence that is countervail. Basically, I want to leave you with the following thought. He who creates the dust containing asbestos controls the dust. And it was Coloa Pacific, the grading and excavating subcontractor that did that, and the owner and that subcontractor should be on the hook, not my client, which all my client did was create some plans and then do some staking that was in accordance with the plans. Thank you very much. Council, Mr. Coney? We can't hear you. We can't hear you. He isn't speaking. He's muted. He's muted. He's muted. He's muted. Can you hear now? Yes. Yes. I'm sorry. Okay. Good morning, Your Honors. I was muted. May it please the Court, I'm Randy Koenig of Koenig Jacobson, and I represent Langen. And I appreciate these moments to give you our side of the case. And with respect to jurisdiction, that basically is a dispute between DEA and the appellant. All the issues regarding Langen were resolved at the lower court level, so I really don't have a vote in that race. I would like to address for a few moments the big question. I can anticipate Judge Corman or other judges saying, well, what about this comment by plaintiff appellant? Dig deeper. That's the only evidence they have of showing of control or involvement operation by Langen. Simply put, the appellant plaintiff does not have a case on CERCLA against Langen because of the clear and concise, explicit language in the two contract documents, which are in the record and stipulated to by the plaintiff, which clearly states that Langen, in their scope of services, has absolutely no involvement with the asbestos, which is specifically identified, or any other hazardous materials. And further goes on, which the plaintiff stipulates they received the contracts and agreed to the terms, which agreed that Langen will have no power, authority, right, obligation to supervise, direct, stop the work of or control the activities of any contractors or subcontractors, construction manager, that would be CDI, their agents, their contractors, servants, employees. That is unambiguous language. And under the McKnight v. Torres case, I believe... ...in the agreement, where it says nothing in the agreement can be, or what the district court said, can be construed as requiring Langen to assume the status. Correct. And that is making it crystal clear, defining the scope of what Langen is doing versus the contractors. Langen has to assist the owner in getting permits with the Los Angeles County Building and Safety Department. They want to get a permit to demonstrate the grading is in compliance with the city laws. Langen says their responsibility under their contract, the additional services contract, was to comply to get the grading permit. You must dig, if you're koala, to competent soil. And the second obligation that Langen was to do was to check the compaction of the soil to make sure it was dense enough. It had nothing to do with the asbestos, the hazardous materials. There was a clear demarcation. And further, beyond the inability to direct, control, hire, tell the contractor how to go about doing their task. We weren't out there that much. At a two-year grading process, we were out there approximately 10% of the time. And so we don't know what is going on. We don't really care, but we want to see the result. So when we see the result, then we can tell the county, you have completed your grading and your compaction in accordance with the county requirements. And that's precisely what we did. And the lower court, I believe, got it right that our contract was fulfilled. We were fulfilling the owner's request to achieve the permits for the grading. And as far as there's a clear demarcation as far as hazardous materials, asbestos, that is not within our scope of work as expressly as said. And I just would echo my co-counsel with DEA's comments that this is Langen under either test. The authority or actual control of operations under the best foods test, even the lesion of cases they cited are really inapplicable because those cases involved environmental engineers, of which Langen is not an environmental engineer. They've never prepared a dust mitigation plan. They don't do that. Eventually, four years later, the owner hired an environmental engineer and did everything that was supposed to be done by an environmental engineer. But that was not what Langen or DEA were to do. Potentially, the contractor... If I could, let me interrupt just a minute. I'm looking at the breach of contract. Which breach of contract, which contract was argued in the district court? Was it the original or the second contract? Excellent question, Your Honor. What was pled... Because I read the complaint, and it talks about the original contract. That's the... It's not a mystery. It was waived, and you're absolutely precisely correct. The original complaint pled a breach of contract of the 2010 agreement. Yet, they were silent on our MSJ as to the 2010 agreement. They raised a breach for the first time of a 2011 agreement, and that's what the court found. It was waived. But if you look at the 2011 agreement, there was no breach because the contract was so clear. It was negotiated arm's length with a practicing lawyer, Rusak, and they actually stipulated in the summons of complaint  Well, but as I understand it, the complaint said original contract. When you move for summary judgment, then they started arguing the second contract. Is that it? That's what they did. And then you said that's waived because you never pled it, and that's where the district court came out? Correct. That's exactly correct. You have it right. Thank you, Your Honor. All right. I have no other questions. All right. Counsel? And I will submit, Your Honor, on that point. Thank you. All right. Rebuttal? The standard of review is familiar, whether there are genuine issues of material fact, and the Fresno Motors case makes clear that summary judgment is precluded where different inferences can be drawn from facts, even if the facts are undisputed. Here, the key facts as to Langen are set forth in the Trevor Snell deposition at 2574 and 2633. Snell testified that Stephanie Montgomery of Langen was at site if the contractor was excavating, and the purpose was to make sure the contractor had dug far enough. And in instances, Langen did tell the contractor to dig deeper. The technical reasons are in the Grave deposition at 2860, but the important thing for summary judgment purposes is that Langen was directing how deep to dig. Now, a few words on the hazardous materials exclusion. If you read the language of that exclusion, which is quoted in ERE's opening brief, basically it gives Langen the option of suspending services upon the discovery of hazardous materials, such as naturally occurring asbestos. Langen did not suspend its services. Instead, it proceeded to monitor and direct grading and excavation. So that exclusion doesn't help them on summary judgment. It just gave them the option to stop work, walk away, call a timeout, but they didn't do that. They kept going to the site. They were there every time there was excavation, and they were telling the contractor, in some instances, to dig deeper. So as to Langen, there's clearly a disputed issue of material fact. As to... I'm interested that you would begin there, but maybe it is because you didn't say anything about Langen before. It seems to me that your biggest problem is coming up with some jurisdiction here based on that letter. Because if I go to James and I look at it very carefully, it seems to me that the fact that you had a statute of limitations or latches problem, which could have come, might save you, but there's nothing in there that's like this letter, which seemed to be solely for the attempt, then, to manipulate yourself into some jurisdiction. So I don't know what it is. I don't know why it is that I would assume jurisdiction of this case. Because you have an unconditional stipulation combined with the docket 15 page 7 concession by ERE that the claims are dependent. That's your best argument? That's right. That's right. It's the American state's argument that there's nothing... I understand. ...for the trial court to decide if this case were kicked back to the trial court. Thank you, Your Honor. I have no other questions. Are you done, counsel? Yes, ma'am. All right. Thank you. The case just argued is submitted for decision by the court. We thank counsel for their help in the argument.
judges: Rawlinson, N.R. Smith, Korman